UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Charles Richards,   Civil No. 06-3356 (MJD/FLN)

    Plaintiff,

v.   **REPORT AND RECOMMENDATION**

The Federal Bureau of Prisons; Dr. D. Williams,
in her official and individual capacities;
Dr. David Edwardy, in his official and
individual capacities; and Dr. Nahem A.
Naimey, in his official and individual
capacities.

    Defendants.

_____

Elliot Olsen and Justin Short for Plaintiff.
Patricia Cangemi, for Defendants.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on March 23, 2007, on Federal Defendants' motion to dismiss or, in the alternative, for summary judgment [#15]. This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that the Federal Defendants' motion be granted.

### I.   FINDINGS OF FACT

Plaintiff Charles Richards is a federal prisoner who is currently incarcerated at the Federal Medical Center in Rochester, Minnesota (hereinafter referred to as "FMC-Rochester"). (Am. Compl. ¶ 3.) Defendant Dr. Doris Williams was the Clinical Director of the Federal Correctional Institution in Pekin, Illinois (hereinafter referred to as "FCI-Pekin") from June 8, 1998, to January 13, 2001, and was the Clinical Director for the USMCFP in Springfield, Missouri (hereinafter

referred to as "USMCFP") from January 14, 2001, through December 18, 2002. (Declaration of Dr. Doris Williams (hereinafter referred to as "Williams Decl.") ¶¶ 6; 11.)  Dr. David Edwardy was the Clinical Director at FMC-Rochester, at all times relevant to this lawsuit.  (Am. Compl. ¶ 6.)  Plaintiff alleges that Defendant Dr. Nahem A. Naimey was the Regional Medical Director for the United States Bureau of Prisons (hereinafter referred to as the "BOP") at all time relevant to this lawsuit; however, Dr. Naimey states that he is currently the Clinical Director for the Federal Correctional Institution in Memphis, Tennessee (hereinafter referred to as "FCI-Memphis") and that all of his contact with Defendant in that role.  (Am. Compl. ¶ 7; Declaration of Dr. Nahem Naimey (hereinafter referred to as "Naimey Decl.") ¶¶ 1; 6-9.)

Plaintiff has been incarcerated in the Federal Prison System since 1990.  In November, 1999, Plaintiff was diagnosed with chronic hepatitis C (hereinafter "HCV") while he was incarcerated at the FCI-Pekin.  (Affidavit of Charles Richards (hereinafter referred to as "Richards Aff.") ¶ II; Am. Compl. ¶¶ 3; 13.)  HCV is a liver disease caused by the hepatitis C virus.  (Am. Compl. ¶ 13.)

The only known treatment for HCV infection is the use of peginterferon therapy or ribavirin therapy, and the preferred therapy is a combination of peginterferon and ribavirin (hereinafter referred to as "combination therapy").[1]  Plaintiff alleges that he sought combination therapy from Defendant Dr. Doris Williams, the then Clinical Director at FCI-Pekin.  (Am. Compl. ¶ 21.)  Plaintiff does not allege the date on which such request occurred.  Plaintiff alleges that Dr. Williams informed him that "the condition of his liver was not bad enough to warrant any type of treatment." (Am. Compl. ¶ 21.)  Plaintiff alleges that "[n]o liver biopsy, sonogram, blood work, or any other test which can determine the condition of the liver was done at this time." (Am. Compl. ¶ 21.)  Plaintiff

---

[1] *See* http://digestive.niddk.nih.gov/ddiseases/pubs/chronichepc/index.htm

alleges that he was then transferred to the Federal Correctional Complex in Terre Haute, Indiana (hereinafter referred to as "FCC-Terre Haute"). (Am. Compl. ¶ 22.) Plaintiff alleges that he requested and was denied combination therapy at FCC-Terre Haute. (Am. Compl. ¶ 22.)

Portal hypertension is a symptom that can occur in patients suffering from HCV. Portal hypertension is defined as an "abnormally increased blood pressure in the portal venous system, a frequent complication of cirrhosis of the liver." DORLAND'S MEDICAL DICTIONARY 801 (28th Ed. 1994). The portal venous system carries blood from the intestine to the liver, and increased pressure in the portal venous system causes the veins, or varices, to balloon outward. The increased pressure can cause the varices to rupture. On February 25, 2002, Plaintiff vomited blood five times and was rushed to the hospital. An esophagogastroduodenoscopy showed that Plaintiff suffered Grade IV esophageal varices with stigmata. (Affidavit of Elliot Olsen (hereinafter "Olsen Aff.") Ex. 2 at 2.) To stop the bleeding Plaintiff underwent a banding ligation procedure, during which the varices that had ruptured were surrounded by small rubber bands to stop the blood flow to them. (Olsen Aff. Ex. 2 at 2.) Dr. Changjian Chen, a gastroenterologist, performed the banding ligation procedure and recommended that Plaintiff undergo an additional banding ligation procedure in two months. (Olsen Aff. Ex. 3.) On May 15, 2002, Plaintiff suffered another Grade 4 esophageal hemorrhage. (Olsen Aff. Ex. 4.) Plaintiff was rushed to Terre Haute Regional Hospital where banding ligation was again performed by Dr. Chen on May 16, 2002, to stop the bleeding. (Olsen Aff. Ex. 4.)

On July 15, 2002, Dr. Chen wrote a letter recommending that Plaintiff undergo periodic banding ligation until all his esophageal varices had been eradicated. (Olsen Aff. Ex. 5.) Dr. Chen also recommended that Plaintiff be evaluated to determine his eligibility to receive a liver transplant. (Olsen Aff. Ex. 5.) Plaintiff was thereafter transferred to USMCFP. (Am. Compl. ¶ 27.)

Plaintiff alleges that, in July 2002, he began the administrative remedy process to receive combination therapy, liver dialysis, to be placed on the liver transplant list in case of rapid deterioration of his liver, and to get compassionate release to secure private medical treatment. (Am. Compl. ¶ 26.) The administrative records show that Plaintiff submitted a remedy request that concerned his medical care and treatment on July 3, 2002, and that he submitted the remedy request at USMCFP. (Declaration of Dennis Bitz, Attorney (hereinafter referred to as "Bitz. Decl.") attach. C.) Plaintiff completed all three steps for this remedy request and the remedy request was formally denied by Harrell Watts, the National Inmate Appeals Administrator for the BOP, on December 20, 2002. (Bitz Decl. attach. C.)

In August 2002, Plaintiff alleges that he suffered another esophageal hemorrhage and had to receive emergency banding ligation to stop the hemorrhaging. (Richards Aff. ¶ V.) On August 28, 2002, Dr. Michael Wooten, a gastroenterologist, conducted a consultation with Plaintiff and recommended that Plaintiff undergo combination therapy. (Olsen Aff. Ex. 7.) This recommendation was adopted by the then Clinical Director of USMCFP, Defendant Dr. Williams, and the request was sent for approval to the Medical Director of the BOP. (Olsen Aff. Ex. 1.) On October 29, 2002, Plaintiff's request for combination therapy was denied by the Medical Director for the BOP because the National Medical Director concluded that "decompensated cirrhosis is a contraindication to treatment." (Olsen Aff. Ex. 1.) Plaintiff alleges that, after this denial, Dr. Wooten convinced the clinical director of USMCFP to resubmit the request but that Plaintiff was transferred back to FCC-Terre Haute before the application was resubmitted. (Richards Aff. ¶¶ IX-X.)

Plaintiff alleges that, upon being transferred back to FCC-Terre Haute, he explained his medical situation to Dr. Webster, the Chief Medical Director at FCC-Terre Haute, and that Dr.

4

Webster agreed to resubmit Plaintiff's application for combination therapy. (Richards Aff. ¶¶XI-XIII.) However, before the application for combination therapy could be submitted on Plaintiff's behalf, Plaintiff was transferred to FCI-Memphis. (Richards Aff. ¶ XIV.) Plaintiff alleges that he made numerous requests to see a doctor at FCI-Memphis and that these requests went unanswered. (Richards Aff. ¶ XV.) Plaintiff suffered two separate Grade 4 esophageal hemorrhages while at FCI-Memphis and was rushed to the hospital for emergency banding ligation treatment each time. (Richards Aff. ¶¶ XVI-XVII.)

Plaintiff was thereafter transferred to FMC-Rochester on October 13, 2004, where he is currently incarcerated. (Affidavit of Dr. David Edwardy (hereinafter "Edwardy Aff.") ¶ 5.) Plaintiff has never received the combination therapy for his HCV that he requested. (Am. Compl. ¶ 36.) Plaintiff has never received the periodic banding ligation that Dr. Chen recommended to eradicate the esophageal varices and Plaintiff continues to suffer massive hemorrhages periodically. (Am. Compl. ¶ 36.)

Plaintiff filed the present suit on August 11, 2006, pursuant to 42 U.S.C. § 1983, alleging that Defendants demonstrated deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment. (Docket Number 1.) Plaintiff requests injunctive relief as well as monetary damages against the BOP and each of the individual defendants, both in their official and individual capacities. On September 15, 2006, this Court issued an Order granting Plaintiff's request to proceed *in forma pauperis* and ordered service by the United States Marshals for the named Defendants if Plaintiff submitted one properly completed marshal service form and one copy of his original complaint, for each Defendant to be served, within thirty days of the date of the Order. (Docket Number 5.) Plaintiff complied with these requirements. Defendant Williams was served

by the United States Marshal Service via certified mail on November 20, 2006.  (Docket Number 11.)  Defendant Edwardy was served by the United States Marshal Service via certified mail on November 26, 2006.  (Docket Number 11.)  Defendant Naimey was served by the United States Marshal Service via certified mail on November 27, 2006.  (Docket Number 11.)  The BOP was served by the United States Marshal Service via certified mail on November 20, 2006, and the United States Attorney General was served via certified mail on November 17, 2006.  (Docket Number 11; Affidavit of Justin Short (hereinafter referred to as "Short Aff.") Ex. B-R.)

Defendants thereafter filed the present motion seeking to dismiss Plaintiff's complaint or, in the alternative, requesting summary judgment.  Defendants argue that this Court must dismiss Plaintiff's complaint against Defendant Naimey and Williams because this Court lacks personal jurisdiction over these Defendants.  Defendants further argue that sovereign immunity applies to Plaintiff's claims against the United States and that Plaintiff has failed to exhaust his administrative remedies in the present case.  Defendants also advance several other arguments; however, this Court need only address the above three arguments to dispose of Defendants' motion.  For the reasons discussed below, this Court recommends that Defendants' motion to dismiss or, in the alternative, for summary judgment, be granted.

## II.   STANDARD OF REVIEW

According to Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In order to determine whether a certain fact is material, " it is the substantive law's identification of which facts are critical

and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

### III.   LEGAL ANALYSIS

At the outset Defendants argue that this Court lacks subject matter jurisdiction to hear this case pursuant to 42 U.S.C. § 1983, as that statute applies to state, not federal, actors. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971), the Supreme Court held that "petitioner [was] entitled to recover money damages for any injuries he . . . suffered as a result of the agents' violation of the [Fourth] Amendment." This case formed the seminal case

for what is now known as a *Bivens* action. As the Court later described, "*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 464 U.S. 14, 18 (1980). The *Carlson* decision stands for the proposition that the violation of a prisoner's Eighth Amendment rights may also form the basis of a *Bivens* action. *Id.* at 19.

The Eighth Circuit has stated that "[t]his court has referred to a *Bivens* action as 'the federal law analogous to § 1983.'" *Sanchez v. United States*, 49 F.3d 1329, 1330 (8th Cir.1995) (quoting *Vennes v. An Unknown Number of Unidentified Agents*, 26 F.3d 1448, 1452 (8th Cir.1994), *cert. denied*, 513 U.S. 1076 (1995)). The Eighth Circuit has stated that "[a]n action under *Bivens* is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials." *Christian v. Crawford*, 907 F.2d 808, 810 (8th Cir.1990). " 'The effect of *Bivens* was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous, to the § 1983 action against state officials.' " *Bellecourt v. United States*, 784 F.Supp 623, 629 (D.Minn.1992) (quoting *Dean v. Gladney*, 621 F.2d 1331, 1336 (5th Cir.1980)). Therefore, notwithstanding Defendants' objections, this Court has subject matter jurisdiction over the present action and will construe Plaintiff's claim as a *Bivens* claim.

    **A.    This Court Lacks Personal Jurisdiction Over Defendants' Naimey and Williams.**

Once a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff must make a prima facie showing of personal jurisdiction. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir.2004). "Two prerequisites must be met to establish personal jurisdiction over a nonresident defendant. The forum state's long arm statute must be satisfied and the due

process clause must not be violated." *St. Jude Medical, Inc. v. Lifecare International Inc.*, 250 F.3d 587, 591 (8th Cir.2001). However, since "Minnesota long arm statutes extend jurisdiction to the maximum limit consistent with due process, we need only evaluate whether . . . the requirements of due process [are] satisfied." *Wessels, Arnold & Henderson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir.1995).

As stated by the Eighth Circuit, "[t]he requirements of due process are met if a defendant purposefully establishes minimum contacts with the forum state and the exercise of personal jurisdiction in that state is reasonable." *St. Jude Medical, Inc. v. Lifecare International Inc.*, 250 F.3d at 591 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "Minimum contacts are established if a 'defendant has "purposefully directed" his activities at residents of the forum . . . and the litigation results from alleged injuries that "arise out of or relate to" the activities.' " *St. Jude Medical Inc.*, 250 F.3d at 591 (quoting *Burger King Corp.*, 471 U.S. at 472) (internal citations omitted). There are two theories of personal jurisdiction under which to evaluate minimum contacts: general jurisdiction and specific jurisdiction. "Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Dever v. Hentzen Coatings, Inc.* 380 F.3d at 1073 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)). Under the theory of specific jurisdiction, the Court has jurisdiction over a person "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." *Dever*, 380 F.3d 1072 (citing *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414.)

Regardless of which theory is utilized, "[b]oth theories of personal jurisdiction require 'some

act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Dever*, 380 F.3d 1073 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "If a court determines that a defendant has minimum contacts with the forum state, it may then consider whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Dever*, 380 F.3d at 1073 (internal quotations omitted). To determine whether personal jurisdiction exists in a particular case, the Eighth Circuit has

> instructed courts to consider the following factors when resolving a personal jurisdiction inquiry: "(1) the nature and quality of [a defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties."

*Dever*, 380 F.3d at 1073-74 (quoting *Burlington Indus., Inc. v. Maples Indus.,* Inc., 97 F.3d 1100, 1102 (8th Cir.1996)). The first three factors are given "[s]ignificant weight". *Id*. at 1074.

In the present case Defendants argue that Defendant Naimey and Defendant Williams are not subject to the personal jurisdiction of this Court. Defendant Naimey currently resides in Tennessee and is the Clinical Director for FCI-Memphis in Memphis, Tennessee. (Naimey Decl. ¶ 1.) Defendant Williams currently resides in Indiana and is employed as a physician at FCC-Terre Haute; however, at the time relevant to this lawsuit Defendant Williams was employed at FCI-Pekin from June 8, 1998, through January 13, 2001; and was the Clinical Director at USMCFP from January 14, 2001, through December 18, 2002. (Williams Decl. ¶¶1; 6; 11.) Defendants Naimey and Williams each submitted a declaration stating that neither performed their assigned duties on behalf of the United States Department of Justice or the BOP at any federal prisons located in the State of Minnesota. (Naimey Decl., ¶1; Williams Decl. ¶ 1.) In addition, Defendants Naimey and

10

Williams both denied having any minimum contacts with the State of Minnesota sufficient to warrant the exercise of general personal jurisdiction, as neither of these Defendants currently transacts official business in the State of Minnesota; neither owns, uses or possesses any real or personal property situated in the State of Minnesota; and neither has previously owned, used or possessed any real or personal property in the State of Minnesota. (Naimey Decl. ¶ 2; Williams Decl. ¶ 2.) Finally, both Defendants deny having any minimum contacts with the State of Minnesota sufficient to warrant the exercise of specific personal jurisdiction, as neither committed any act inside the State of Minnesota or outside of the State of Minnesota that caused injury or property damage to Plaintiff while he was in the State of Minnesota, and all of these Defendants' contacts with Plaintiff occurred while Plaintiff was incarcerated in federal prisons located outside of the State of Minnesota. (Naimey Decl. ¶¶ 3-4; Williams Decl. ¶¶ 3-4.)

In response to Defendants' motion to dismiss Defendants Naimey and Williams for lack of personal jurisdiction, Plaintiff argues that venue is proper based on 28 U.S.C. § 1391(e). (Pl.'s Mem. in Opp. at 10-11.) Plaintiff does not provide any further affidavits or argument in support of his claim that personal jurisdiction exists over Defendants Naimey and Williams.

The Court has reviewed the record and recommends that Plaintiff's complaint be dismissed as to Defendants Naimey and Williams because this Court lacks personal jurisdiction over these Defendants. Neither Defendant Naimey nor Defendant Williams has had continuous or systematic contacts with the State of Minnesota such that the exercise of general personal jurisdiction over either Defendant would comport with notions of fair play and substantial justice. Similarly, neither Defendant Naimey nor Defendant Williams committed an act, either inside the State of Minnesota, or outside of the State of Minnesota that caused injury or property damage to Plaintiff while he was

in the State of Minnesota. All of Defendant Naimey's contacts with Plaintiff occurred in Tennessee, while Plaintiff was incarcerated at FCI-Memphis. Similarly, all of Plaintiff's contacts with Defendant Williams occurred either in Illinois or Missouri while Plaintiff was incarcerated at FCI-Pekin and USMCFP. Plaintiff has not come forward with any evidence to make a prima facie showing that this Court has personal jurisdiction over either Defendant. Therefore, the Court recommends that Defendants' motion to dismiss Defendants Naimey and Williams be granted, as this Court lacks personal jurisdiction over these two Defendants.

### B. Sovereign Immunity Prevents Plaintiff's Claims Against the BOP and the United States From Going Forward.

In the present case, Plaintiff is suing Defendant BOP and Defendants Naimey, Edwardy and Williams in their official capacities. A claim against a federal employee in his or her official capacity "generally represent[s] . . . another way of pleading an action against an entity of which the officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978). In addition, as stated by the Eighth Circuit, "Bivens and its progeny do not waive sovereign immunity for actions against the United States; [*Bivens*] implies a cause of action only against federal officials." *Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir.1982). Furthermore, the United States Supreme Court has held that *Bivens* actions are not available against federal agencies. *Federal Deposit Insurance Corp., v. Meyer*, 510 U.S. 471, 485-86 (1994).

Since *Bivens* and its progeny do not waive sovereign immunity for actions against the United States, and since *Bivens* actions are not available against federal agencies, the Court recommends that Defendants' motion to dismiss be granted insofar as it relates to Defendant BOP and Defendants Naimey, Edwardy and Williams in their official capacities.

### C. Plaintiff Failed to Exhaust His Administrative Remedies Against Defendant

### Edwardy; Therefore, the Court Recommends that Plaintiff's Claim Against Defendant Edwardy Be Dismissed.

42 U.S.C. § 1997e(a) states that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The United States Supreme Court noted that "federal prisoners suing under *Bivens* . . . must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Therefore, a federal prisoner must exhaust his administrative remedies before he can bring a *Bivens* action into federal court.

28 C.F.R. § 542 describes the administrative remedies available to federal prisoners. 28 C.F.R. § 542.13(a) states that "an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." If the attempt at informal resolution is unsuccessful, the inmate must submit a formal written Administrative Remedy Request on form BP-9 to the staff or Warden at the institution where the alleged violation occurred. 28 C.F.R. § 542.14. "The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the request occurred." 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response to his Request for Administrative Remedy, the inmate may appeal this decision to the appropriate Regional Director using form BP-10. 28 C.F.R. § 542.15(a). This appeal must be submitted "to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id*. If the inmate is dissatisfied with the response of the Regional Director, the inmate may appeal the decision to the BOP's General Counsel using form BP-11. 28 C.F.R. § 542.15(a). Such an

appeal must be submitted "within 30 calendar days of the date the Regional Director signed the response." *Id*. Once an inmate receives a response from the BOP's General Counsel that inmate has successfully exhausted his administrative remedies for that claim. *Id*.

The United States Supreme Court recently noted that "[c]ompliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.' " *Jones v. Bock*, 127 S.Ct. 910, 922-23, (2007). The Supreme Court in *Jones v. Bock* held that the PLRA does not require lower courts to dismiss the entire complaint where that complaint contains both exhausted and unexhausted claims. *Id*. at 923-26. The Supreme Court instructed the lower courts to dismiss only those claims concerning prison conditions that were not properly exhausted prior to the filing of the complaint. *Id*.

In the present case, Plaintiff did not exhaust his administrative remedies for his *Bivens* claim against Defendant Edwardy. The record in the present case includes two completed administrative remedy requests[2]. The first request was denied in its entirety by Harrell Watts, the National Inmate Appeals Administrator, on December 20, 2002. (Bitz Aff. attach. C.) Defendant Edwardy was the Clinical Director at FMC-Rochester from the time Plaintiff was first admitted to FMC-Rochester, on October 13, 2004, until Dr. Edwardy retired as Clinical Director of FMC-Rochester on September 30, 2006. (Edwardy Aff. ¶¶ 1; 5.) The first completed administrative remedy request was closed on December 20, 2002, over one and a half years before Plaintiff was transferred to FMC-Rochester and had his first contact with Defendant Edwardy. Therefore, this administrative remedy request

---

[2] In addition, there is an "Inmate Request to Staff" form in the record, dated July 10, 2006, wherein Plaintiff requests to be put in for a liver transplant. (Olsen Aff. Ex. 9.) However, an "Inmate Request to Staff" form is not one of the three approved steps in the administrative process. *See* 28 C.F.R. § 542.

14

does not relate to Plaintiff's claims against Defendant Edwardy, as the request was submitted prior to Plaintiff's transfer to FMC-Rochester and his first contact with Defendant Edwardy.

The second request in the record is an administrative remedy request for compassionate release or a reduction in Plaintiff's sentence due to his medical condition.[3] (Second Declaration of Patricia Cangemi, dated February 28, 2007, Ex. A.) This administrative remedy request was exhausted on February 7, 2007, when Harrell Watts, the National Inmate Appeals Administrator, denied Plaintiff's request. (Second Declaration of Patricia Cangemi, Ex. A.)

The second administrative remedy request does not allege that medical personnel at FMC-Rochester were deliberately indifferent to Plaintiff's serious medical needs. This administrative remedy request merely requests compassionate release or a reduction in Plaintiff's sentence due to his medical condition. As this administrative remedy request does not include any allegations that prison officials at FMC-Rochester were deliberately indifferent to Plaintiff's serious medical needs, and as there are no other administrative remedy requests in the record making such claims at FMC-Rochester, the Court concludes that Plaintiff failed to exhaust his administrative remedies against Defendant Edwardy. Therefore, the Court recommends that Defendant's motion to dismiss be granted as to Defendant Edwardy, as Plaintiff has failed to exhaust his administrative remedies as

---

[3] The BP-9, BP-10 and BP-11 forms that Plaintiff filed as a part of this administrative remedy request are not a part of the record in this case. Defendants submitted the Second Declaration of Patricia Cangemi on February 28, 2007, and this declaration included only the denial of Plaintiff's request by Harrell Watts, the National Inmate Appeals Administrator. As the denial of the remedy request by the National Inmate Appeals Administrator is the final step in administrative remedy process that is required before a claim is properly exhausted, the Court concludes that, even though the record does not include Plaintiff's BP-9, BP-10 and BP-11 forms, Plaintiff has successfully completed each step of the administrative remedy process and completely exhausted this administrative remedy request concerning compassionate release or receipt of a reduced sentence.

to Defendant Edwardy.

## IV.  RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Federal Defendants' motion to dismiss or, in the alternative, for summary judgment [#15] be **GRANTED** and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

DATED: April 18, 2007              s/ *Franklin L. Noel*
                                   FRANKLIN L. NOEL
                                   United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **May 7, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **May 7, 2007** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.